Okay, we'll call our next case. Ovalle v. Attorney General Ms. Williams, you may proceed. Good afternoon, Your Honors. May it please the Court. My name is Kimberly Williams, and I'm here on behalf of the petitioner, Ovalle, and may I please reserve two minutes for rebuttal? Yeah, and just for my sake, would you say his first name again? Sure, Ambriorix. Okay, thanks. Your Honors, we're here today to address two overarching issues. The first of which is the denial of the petitioner's motion to reopen. His removal proceedings were on the board declined to exercise its sua sponte authority, citing the post-departure bar. And additionally, the petitioner has requested that this Court remand his case to the Board for consideration of the application of Pereira v. Sessions to his case, as he was issued a putative notice to appear as described in that case, wherein it did not contain a date, a time, or even the location of the immigration court for his hearing. And therefore, he argues that his removal order is void and ab initio. Okay, we've got to fix on what the issues are. Can you start us off by answering for us whether we would have to overrule the side? I think in this case, yes. And the reason being is that the post-departure bar regulation, under these circumstances that are presented here, should not be allowed to foreclose the ability of an alien to challenge an invalid removal order, especially where the Board has previously allowed an exception for the bar. How would we do that, Ms. Williams? Because we're a panel. The side was a panel decision. We can't overrule a panel decision. How would you have us write a decision that would allow you to win? Is there a way for you to win without this side being overruled? I guess that's another way to ask the question. I think in this instance, it's one where the Court should revisit our deference and also potentially… Can you slow down a little bit and speak up a little bit? Sure, Your Honor. I think in this case, it's one where the Court should revisit its findings on our deference as well as Chevron deference as it would apply to the specific circumstances of this case. Should we hold the CAV? I think the argument today is very valuable one way or the other, but should we wait for the decision that is about to come down or will come down from the Supreme Court? I don't necessarily think that you need to wait. I think there's enough in the arguments that will be presented today as well as what's in the brief. However, should you find that the Supreme Court decision would be relevant to this case, it would be up to the Court's decision whether or not they would want to stay issuing a decision. I know that the oral argument in this case is going to be heard by the end of this month, so depending on the time in which the Court would need, a decision may be issued by the Supreme Court. Short of a decision in Kisor that might give us some basis to revisit our deference, given your concession that this case is otherwise controlled by DECI, what is there left for this panel to do if we proceed and don't hold the case? I wouldn't contend that I am saying that this is otherwise controlled by DECI. I think there is cases that we cited, Kukana and Reyes, that allow the Court to review what appears to be motions to reopen, although those cases didn't deal specifically with Sue Espont. Part of what they address is where there's a culpable issue of law. But DECI did deal with it specifically. That's what you've got to come to grips with, Ms. Williams. DECI has got this very issue in front of the Court. The Court says that is something that the BIA is permitted to have as its own rule. It distinguishes Presto Espinal, and before it ever gets to talking about Zhang or deference or anything like that, it says motions to reopen Sue Espont, like the one DECI filed in this case, are not governed by the statutory scheme that is ERIRA, which was at issue in Presto Espinal. Therefore, the Presto Espinal decision, according to DECI, does not extend to cases like this one, where neither the statutory right nor congressional intent is in the case. That's the holding. Why doesn't it just squarely control here? Well, I think in this case DECI relied largely on Zhang, and even in Zhang, Zhang noted that the BIA had placed a caveat on its own discretion to be able to allow a motion to reopen, even where the post-departure bar existed. Let's pursue this before you say that relied on Zhang. What I just quoted to you comes before there's any mention of Zhang at all. It's only after that holding is stated that the court says our decision today finds further support in Zhang. So how do we read that? Should we read that as saying, oh, DECI depended on Zhang, and if Zhang is wrong, then DECI is wrong, or should we read that as DECI had a holding before saying anything about Zhang at all, and then it says there's also support in other circuits for where we end up today. In short, it's not depending on Zhang for its holding. It's simply referencing it as further support, which is the better reading of the case. I believe that it's relying on Zhang for its main holding and also allowing for our deference, which is the two issues that I'm bringing forward. It's relying on the other circuit courts have given deference through our deference to the post-departure bar in other cases. What do we make of the word further there, then? Our decision finds further support in Zhang because it looks like what the court has said is this is our holding. We're reaching this independent of anything that any other circuit has said. We look at our own decision in presto espanol. We look at the statute. We make a distinction, and we say presto espanol is limited to those cases where the statutory right is at issue. It's not at issue here. Done. What do we make of the words our decision finds further support in Zhang? And you say it depends on Zhang. How so? Well, it depends on Zhang in that what Zhang had found was they were relying on our deference but said that if they were working with a clean slate, the second court might have come to a different decision. However, they recognized that the board, even though they have basically had a carte blanche where you don't make exceptions to the post-departure bar rule, in a decision that was actually published by the board in 2009, in Ray Bullness, 25 INM Decision 57, the court in that case had said, you know what, we understand that there's been sort of an erroneous view of the law when it came to an IJ's ability to entertain a motion to reopen for a case where someone was deported with an absentia order that's based on lack of notice. Therein they found that there was a culpable issue regarding due process that may allow the court to then view that a carve-out exception for the board to be able to say the post-departure bar maybe doesn't apply in all cases. If we were the Second Circuit and we had said those things about deference, then maybe we would be in a circumstance where we'd have to say, uh-oh, we better wait on Kaiser because that could change everything. But we're not the Second Circuit. If we just reference it as other courts have ended up in the same spot, do we pull in as the basis for our stated holding everything that the other court may have said? I don't know that you would have to pull everything, but I think it would be helpful under the circumstances. What do you make of our statement in Desai after describing Zhang that we agree with and adopt the Second Circuit's analysis? I think in that case the argument that I'm making today about the fact that, on the one hand, the board tries to say that in using our deference that you should allow us to basically say the post-departure bar, you can't overrule it, it should be given deferred under any circumstances. But then on the other hand you have the board saying, oh, but in this case we're going to make an exception. You're ending up with an arbitrary and capricious situation where, on the one case they recognize that there's a due process violation for someone who is deported with an innocential order that could be making a claim based on lack of notice. So therefore they're going to allow an IJ to reopen the case. In the situation at hand here we have a petitioner who his only conviction that he had was a youthful offender conviction under New York law that the underlying IJ even said, I don't believe this is a conviction for immigration purposes under the statute. I thought that the Second Circuit's skepticism of the BIA's decision related to its treatment of the post-departure bar as jurisdictional, that it was depriving the BIA of jurisdiction. And it was around that issue that it was saying that it might have reached a different decision when writing on a clean slate. But haven't we in the Third Circuit already crossed that bridge? Because in Prestall-Espinal we said that an agency can't, by procedural rule, divest itself of jurisdiction. That's solely in the province of Congress. And just a few months before that in Plume we had talked about the sua sponte reopening and repeatedly referenced the discretion of the BIA. So haven't we put our own spin on what the BIA is doing that is not necessarily jurisdictional bar but that it is an exercise of the BIA's discretion to treat sua sponte reopening, granted in a categorical way, but that it's an exercise of discretion? Yes, but exercise of discretion by this court and other courts where it is arbitrary, capricious, and otherwise erroneous or a violation of the law can be reviewed. And that's what Kukana and Reyes-Mata talked about, is that the board just can't shield itself by saying on the one hand we're going to create this regulation, we are the only ones that have discretion, we're the only ones that can interpret it, but then later on decide that it's going to carve out these exceptions that create an inconsistency with how the law is being applied. And in these cases, if you... Carve out an exception, what are you referring to? Are you referring to the fact that they later changed their mind about the juvenile conviction? No, the fact that they carved out the exception in bonus, allowing IJs to review motions to reopen where an in absentia order was in question regarding lack of notice. The reason they allowed that is they realized it was a due process issue that someone may not have had an operable removal order and therefore they're allowed to then challenge the post-departure bar. Are you talking about the two-step issue here? Are you arguing that... Have you moved to the Perea issue? Not just yet. I've got lots of questions before you move on. No, I'm not trying to move on. I'm asking her if she's moved on. I'm trying to understand what her answer is. Are you now talking about Perea and saying... No, I don't think she's talking about Perea at all. Let me ask her. But I don't want to get off on Perea before I have a chance to... Trust me, I will give you all the time you want, Judge Rah. So my question to you is what are you referring to when you say the IJ doesn't have the opportunity to do that? Are you moving to Perea or are you saying something different? Not just yet, Your Honor. I have not moved into the Perea issue. What I'm talking about is that in bonus, the board carved out an exception to its own, what appeared to be inviolable rule regarding post-departure bar, that you couldn't challenge it, there was no discretion to do it because they recognized in that decision that there was a due process issue that was being violated for people who were being deported with orders of in absentia that were potentially colorable claims for challenge because of lack of notice. But that wouldn't be arbitrary and capricious then, right? I'm sorry, but the fact that they're... In that decision they carve out, you're saying the post-departure bar would be unlawful because they've made arbitrary and capricious exceptions, but you've just described something rooted in due process, which then by definition would not be arbitrary and capricious, right? Your Honor, it makes it arbitrary and capricious in the fact that they're only carving out the exception for one potential due process issue, which I will then get into my Perea issue, which is also a lack of notice. But in this case, another due process issue is that the underlying IJ, in this petitioner's case, had determined that he wasn't removable at all. The only offense on his notice to appear was the one that they ended up ultimately removing him on, saying that it wasn't a youthful offender offense. I'm out of time. May I finish? You're on our time now. Judge Roth has said she's got a lot of questions. Are you familiar with the case of Mata v. Lynch? I'm sorry, which one? Mata v. Lynch. Ray is Mata v. Lynch. Do you think it has any bearing on this case? I do. I believe that it allows this court to have jurisdiction to review whether there is a violation of or abuse of discretion with the board reviewing the sua sponte motions, especially when there's culpable claims of law. Isn't that quite relevant to what we've been talking about? Yes. Yeah, right. I mean, the court says that courts lack jurisdiction over one matter. The sua sponte decision does not affect their jurisdiction over another, the decision on the alien's request. Yes. And isn't that, in essence, saying that we couldn't say that the board abused its discretion in not hearing this request, but that certainly the board had jurisdiction to look at the legal basis of the request. Is that... Yes, Your Honor. I would agree with that. And this is a case that has come later than the PSY and perhaps cuts the legs off the PSY. I would agree with that, Your Honor. Yes. And to the point that I'm raising, why it has sort of a double issue regarding the arbitration standard. And we believe that the board should have reviewed it because, in this circumstances, the board overruled the IJ at the petitioner's lower level, where he was found not to be removable. And within less than nine months of the petitioner being removed from this country, they found a completely inopposite decision, which they published. All right. So, under Matter v. Lynch, the board had jurisdiction... Yes. ...to consider that legal issue. They did, Your Honor, and they refused to do so, citing purely to the post-departure bar. Right. And 17 years later, your client raises the issue. Yes, Your Honor. Right. So, under those circumstances, if we accept that the BIA is entitled to lay down its own categorical rules, whether you call them jurisdictional or not, is there something arbitrary and capricious in them not revisiting something that happened 17 years previously? I do believe so under the circumstances in this case. And I think it also then rolls into my argument regarding Pereira in that this... Before you go there, before you finish on this case. Well, that if they had said, we exercise our discretion, we will not hear this case, that was one thing. If they say, as a matter of law, we have no jurisdiction to hear this, then I think that is not compliant with Matter v. Lynch, right? In part, yes, and in part, no, Your Honor, because I believe that in refusing to take the case and actually hear it on its merits and citing simply post-departure bar, they overlook the underlying culpable claim that is there, a constitutional issue in this case. But for the erroneous decision previously entered by the board, this person would have never been removed. And if this person was here in the United States right now, he would not be removable. So I think in this case, it presents a very difficult dichotomy of how to address an error that was made many years ago, but for the many years of jurisprudence that have happened in between, this has been a very difficult issue to even argue and try to bring back to the courts. Can we just take a look at that premise, that is, that the board overruled the IJ or made an erroneous decision? Because my understanding from the record, and correct me if I'm wrong, is that he prevailed before the IJ. Yes. And then when the government appealed at that point, he conceded removability and didn't put up any opposition to the government's argument, and so he was removed on consent. Isn't that right? Not in total, Your Honor. So initially, he did challenge it, and then later he did state that he would not fight it. I would note, though, for the record, at the time, he was a minor in 17, so the idea that he knowingly waived his rights, I think, is also in question. Was he represented? He was represented by counsel, Your Honor. Okay, so he was represented by counsel, and you say he said he wouldn't fight it. He actually entered a consent, didn't he? He did, Your Honor. Okay. Why isn't, interesting as these issues are around Desai and our deference, why isn't the argument in this particular case simply waived, given that he conceded removability? I think in this case, Your Honor, the board, when it actually issued its decision, only noted that secondarily in its first argument for why it was ordering the respondent now petitioner removed, they gave the whole argument that they considered it to be a conviction. So they actually went to the point of making a legal finding in their decision that even if he hadn't put in that motion, they would have still found him removable and still deported him. So I think that's where it raises an issue that's colorable. Well, even if it's colorable, the question that's put to you is, if it is the case that the BIA's decision could stand on its own on the consent entered by a counsel applicant or petitioner, if that's enough on its own, why would we get into all these other things? Wouldn't that all be, in effect, just a waste of everybody's time if, at the end of the day, he's still removable and was properly removed based on consent? Well, I think in this case, unlike if he voluntarily took voluntary departure, voluntary departure does not allow for a motion to reopen under different circumstances. But in this case, I think it is distinguishable in that there was an alternative order that was put in place. I do understand where the court is coming from in terms of he requested to go, but I think the fact that there was a change in case law nine months later related directly to his case allows him an opportunity to come back with new information that he wouldn't have been removable in the first place. Seventeen years later. And it's the same argument he was making before the IJ and made successfully and then dropped on appeal. Understandably, Your Honor, but I think from the circumstances, not trying to get too much down into a humanizing aspect of this, but it was a 17-year-old who had been in detention for many, many months and was being told he had no options, was being told that he wasn't going to be able to win his case and he didn't want to stay in detention anymore. I mean, this was a young man, not even an adult, when he was actually deported from this country. And I think that impacted his decision. And I understand that the court. He had already won his case before the IJ, right? But he was being led to believe by the government that he was going to have to stay in detention. They weren't going to release him. He was being kept in detention because the government had requested it while he was going through his proceedings. And for someone of that young, impressionable age, it was a very difficult decision for him. Now, before we let you go, you've been trying to get to your Pereira argument. And we'll give you a couple minutes. Thank you, Your Honor. So notably, I think what makes this very interesting in terms of the board's prior decision in Bolness is that this is a case, I would argue, is one where he was ordered removed without lack of proper notice. And that comes from the Pereira decision. But Pereira, and, you know, you need to come to grips with the Ninth Circuit's Karens-Giese and the Sixth Circuit's Hernandez-Perez decisions, both of which make a distinction, as we did in Desai, between ARERA-based issues and regulatory-based issues, and say it just doesn't. Pereira is, by its terms, a narrow holding. It has nothing to do with a regulatory-based jurisdictional question of whether the IJ has jurisdiction or not. What's your response? I respectfully disagree with that. It's very clear that the court in Pereira stated that 1229 is an unambiguous statute, and 1229 is what authorizes the creation of the CFR under Sections 1003.13, .14, .15, and .18. It's the Third Circuit and the Sixth Circuit's decision, right? It's not enough for you just to say Pereira says what it says. We know it says what it says. But you've got two circuit courts in the last six months or so saying you're wrong. Why are they wrong to say your position is wrong? Actually, we have a Third Circuit court case that says she's right. So in the current respect with this, Hernandez-Perez and the Sixth Circuit is citing to our deference, and they're citing to our deference for the basis that Bermuda's Coda was issued correctly in terms of the board's interpretation of their regulations under 1003.13, .14, .15, and .18. So because Hernandez-Perez is relying on our, which we argue is something that should be reviewed, because it allows the board to basically create standards that are shielded from judicial review, and this is a case where the Supreme Court was extremely clear. You cannot have regulations that supersede unambiguous statutes. So here's what Hernandez-Perez says. It says, Importing Pereira's holding on the stop time rule into the jurisdictional context would have unusually broad implications. Almost 100% of the NTAs issued during the three years preceding Pereira did not include the time and date of the proceedings. Pereira is emphatically narrow-framing counsels in favor of distinguishing between the two contexts. There's not a hint about our in all that. That's a statement from the Sixth Circuit saying, We just don't think that the Supreme Court meant to reach nearly 100% of all the removal proceedings that have occurred in the last three years. What's wrong with that reasoning? So in other words, the government can refuse to even follow its own regulations nearly 100% of the time. No, they're following the regulations. The problem is you don't like the regulations. You're saying they should follow the statute. The statute is what's applicable here, not the regulations. Correct. What I'm trying to get you to grapple with is the Sixth Circuit saying, Look, we don't believe Pereira reaches that. They don't say it on the basis of our deference. They say that would hit nearly all removals in the last three years. We just don't believe the Supreme Court meant to reach that. Why is that bad reasoning? Because, again, they're relying on a statutory interpretation that they believe the regulations are following. But, in fact, the Supreme Court was very clear. This is an unambiguous statute. You cannot create regulations that don't follow what the statute says. And as was really clear in Pereira, 1003.113 describes what a charging document is. Then it states in 1003.14 that jurisdiction is vested with a charging document. And, in fact, even in the dissents. And it says what the charging document is, right? It says the charging document is a notice to appear. But 1229, Section 1229, states clearly what must be in a notice to appear. So the fact that the attorney general, the board, they have created regulations that basically state something contrary to what Section 1229 says regarding what should be contained in a notice to appear. You can't then go on to say that you have this document that was in the dissents in Pereira is akin to a three-wheel Chevy. To then say, oh, let's add a fourth wheel to it, and now it's a car. It doesn't work that way. And so that's what we're trying to state is that it's unambiguously rejected loosening the NCA requirements by requiring that the NCA include removal hearings time and place. I would also – Understood. We're giving you lots and lots of time. Let me ask, are there other questions you'd like to ask, Jennifer? Just a final one on this. How is this issue properly before us, given the exhaustion requirements? So at this point, Pereira wasn't decided by the time this case started through, and it wasn't decided by the time we even filed the petition for review. At this point, we're not necessarily asking the court to make the ultimate decision on it. We're asking the court to remand to allow the board the opportunity to review this if the court chooses not to take jurisdiction over it at this time. But our whole point is that we believe this is a jurisdictional issue. We believe that this whole order that is presenting the problem for the post-departure bar in the first place was void at the outset. So because they didn't have jurisdiction, it's a nullity. And because it's a nullity, nothing that extends from it, whether it's the initial removal order or the board's refusal to entertain our motion to reopen, none of that can exist. Okay. Thank you. Thank you very much. Oh, I'm sorry. Before you go, did you reserve time? I did reserve two minutes, Your Honor. Okay. Thank you. We'll have you back on rebuttal, Ms. Koros. Good afternoon. May it please the Court, Lindsay Kualos, the respondent. First, this Court should deny the petition for review in part and dismiss the petition for review in part. The board properly found the petitioner's untimely motion to reopen was subject to the post-departure bar at HCFR Section 1003.2d. Did it do that as a matter of lack of jurisdiction or as a discretionary matter? As a lack of jurisdiction. It states that he's ineligible based on the post-departure bar, and it cites this Court's case in Desai, which states that the Court properly finds that it cannot consider a non-statutory motion to reopen filed by a petitioner who has already been removed from the United States pursuant to a removal order. And how do you consider that in view of Matter v. Lynch, which has said a sua sponte motion that is over time, is late, we still have, the Court still has, the board still has jurisdiction to hear it? Well, the board does still have jurisdiction to hear a motion that is untimely under its sua sponte powers. However, those sua sponte powers, that authority is limited. And so the way that the regulations are set up, under A, it states that the board may reopen sua sponte on its own motion, any case in which it has made a decision, and then it goes on to say subject to the following restrictions, or some restrictions. And then at Part D of that regulation, they state that no party or no one on the behalf of a party may file a motion to reopen for a party who has already been removed from the United States subject to a removal order. But the Supreme Court has recognized jurisdiction, granted not in this situation, but recognized that the courts have jurisdiction to consider the legal matter. They don't have jurisdiction to consider the exercise of discretion. My understanding of that case is that the court does have jurisdiction to consider whether or not the board issued its decision in the correct legal context. So had the board made a legal determination, well in this case the board did make a legal determination, its legal determination was that it lacks jurisdiction. So this court has jurisdiction now to review whether or not the board properly found that it lacked jurisdiction. So this court may review that legal basis that the board relied on in dismissing the motion. How do you square that with our statement in Presto Espinal that an agency cannot, as a matter of a procedural rule, disclaim jurisdiction, that the jurisdiction of the agency, if we're really talking about jurisdiction, is Congress's alone? Well, as I explained in Zhang, this isn't a situation in which Congress gave the agency powers and then the agency restricted its own powers given to it by Congress. In this case, as far as sua sponte motions, that's non-statutory motions, that aren't referred to by Congress in the INA, the Attorney General promulgated his own regulations in order to deal with how, in order to deal with the sua sponte reopening. And because the Attorney General promulgated those regulations, subsumed within that power is also his power to limit the jurisdiction that he's going to exercise. So it's not a matter of not exercising jurisdiction that Congress gave, it's a matter of limiting the jurisdiction that the Attorney General created for himself. It doesn't matter versus Lynch, so you can't limit at least, well, in the motion before the court there, you can't limit that jurisdiction just because the request is late. Well, my understanding is that the board can limit its jurisdiction when it's limiting the jurisdiction that it created for itself. But how can, jurisdiction is a legal matter. Yes. And don't the courts understand legal issues better than the Board of Immigration Appeals when it comes to interpreting a legal term such as jurisdiction? Aren't the courts the ones that should do that rather than the board? We defer to the board on immigration matters, but, quote, jurisdiction, unquote, is not an immigration matter. I agree, and I'm not disputing that this court has jurisdiction to review the legal matter of whether or not the board properly declined to, properly relied on the post-departure bar in denying the motion to reopen. But don't, in determining what the board calls, Shane goes into this question, nobody has really determined what jurisdiction means, and they decide they're not going to do it in the Second Circuit. They go on and say, you know, maybe we ought to think about this, but we're not going to do it. But maybe we ought to think about it. It seems as though the Second Circuit actually did think about it. So what the Second Circuit found was they said if we were operating on a blank slate here and there was no deference owed to the board, then perhaps we would have decided this case differently or interpreted this regulation differently. However, the Zang court found that it was not operating on a blank slate because, in fact, the board had already interpreted its regulation in a published decision, a matter of Armandrez-Mendez. So is our in play here in light of the size? Do we have to wait around for Keiser to decide what to do here? It would certainly make my job easier to say that simply because Desai stated that it was relying on Zang as additional support that this court need not consider or would consider their reliance on Zang to be dicta or just additional support to a finding that already made. However, I do think that there is some tension where this court and Desai did say that it was adopting the Second Circuit's reasoning. So I think it might be helpful in order to just discuss briefly what is going on in the Keiser versus Wilkie litigation and why that shouldn't affect this court or the Second Circuit's interpretation of this particular regulation. Before we do that, can we just back up to your statement that here there's the attorney general limiting the jurisdiction that the attorney general gave itself, that the agency gave itself. How does an agency give itself jurisdiction beyond the powers that Congress has allocated? So when Congress made the INA, it specified that an alien has one motion to reopen and one motion to reconsider that must be filed within certain timelines and then there are certain exceptions. And that's the statutory motion to reopen. Whereas it granted to the attorney general the ability to decide its own regulations as far as sua sponte. And so there's no statute that says, that gives the board or specifies how the board may exercise its sua sponte jurisdiction. The only source of authority for sua sponte jurisdiction comes from the regulations promulgated by the attorney general. Pursuant to that statutory grant. Well, yes, I guess. Well, it would have to be, right, because we're still living in a democracy and the agencies aren't free to give themselves jurisdiction, are they? This is true. So the Zang court gets into this quite in depth as to the difference between when Congress provided authority to, and then the agency limited the authority itself that Congress provided versus when there's a regulation and then they define the contours of the own regulation that they wrote. So Zang gets into this pretty thoroughly and at the end of it they come out with the determination that since we're talking about non-statutory motions, that the attorney general had the power to limit its own discretion. But that's discretion, not jurisdiction, right? Aren't those fundamentally different? And if we're talking about the exercise of discretion and doing it as a categorical matter, we've said that's functionally unreviewable. But if what we're talking about is an agency that actually has the power to review these things, saying, I don't have the power, we are precluded as a matter of our actual legal authority to even consider the motion, then we've got a legal issue and we've got significant tension with the question of who gets to decide jurisdiction, right? And that's where our deference may come in, where we've got a problem with the interpretation of the statute and the regulations that then follow from it. Well, I would just say to start that this court did already address this exact issue in Decide. And they did already decide that the agency's determination that the post-departure bar applies to non-statutory motions is proper. Indeed, which is why it's odd that you would say on behalf of the government, yeah, but there's tension in your case law because of Zang and so we really should be talking about our deference. Oh, I'm sorry. I didn't mean to. It sounded like you were putting that right on the table. Well, I thought that you were asking whether or not in light of the Kaiser litigation, whether or not our deference could possibly come into this. As the law stands, this is settled in this court. Decide settles this issue and there's no real, and it's binding on this court. But is that to say that in Decide we recognize that the BIA could, as a categorical matter, exercise its discretion this way or that it could divest itself of jurisdiction? And if the latter, how do you square that with our statement in Prestle-Espinal? Well, so the way that you square it with Prestle-Espinal is that Prestle dealt with statutory motions to reopen that came from the INA and that this is a non-statutory motion. The sua sponte kind of motion is not in the statute. So that's how it's squared. But to answer the question about, I'm sorry, you asked two questions and now I'm forgetting what the first one was. Is Decide really putting our stamp of approval on the notion that the board lacks jurisdiction? That's actually the whole thing. The board can categorically treat sua sponte reopening this way. Well, matter versus Lynch has come since Decide. Does that mean we ought to give a new look at what's going on? My understanding, so perhaps I have misread matter versus Lynch, but my understanding of matter versus Lynch is that this court has jurisdiction to look to see if the board applied the correct law. And so that's all I'm saying. Matter versus Lynch is not about the BIA's jurisdiction. Matter versus Lynch is the Supreme Court talking about court of appeals jurisdiction. Is that right? Yes, that's my understanding. Yes, that the court of appeals can review the legal basis that the board relied on if the board relies on a legal basis for denying sua sponte reopening. And if the board relies upon lack of jurisdiction, that's a legal basis that the courts can look at. Yes. And the court did look at it in Decide. And to answer the question about whether or not it actually stated that the board properly limited its own jurisdiction, it actually that is the holding of that case. It says, as we've explained, motions to reopen sua sponte like the one Decide files in this case are not governed by that statutory scheme. Thus, the concern driving our holding in presto espanol that the post-departure bar undermines the alien statutory right to file one motion to reopen does not extend to cases like this one where neither that statutory right nor a congressional intent is implicated. But that doesn't speak to the question of whether we're talking about a jurisdictional bar or we are simply upholding the BIA's exercise of discretion as a categorical matter. Is the attorney general promulgating this regulation that's not going to jurisdiction per se, but that's just categorically limiting the filing of this type of motion? So either way, so either way, what the board held in this case is that petitioner is ineligible based on this regulation, the so-called post-departure bar. In Decide, this court said it was proper for the board to rely on that regulation. Right, and the question that's being put to you, I think in a nutshell, is does it matter that the court and that the BIA use the word jurisdiction? Is that a matter of legal consequence that we need to wrestle with? If they say, hey, we're not doing this because we don't have jurisdiction, is that their shorthand way of saying we have a categorical rule which we choose to apply and we're applying it? Or is it a statement by the BIA that we just can't do this even if we wanted to, we couldn't do it? In other words, is jurisdiction being used in a loose way here that we shouldn't worry about? Or is it being used here in a way that shows that the BIA fundamentally misunderstands its own power? So this is where it might have been instructive that the Decide court actually relied on Zang, because Zang gets into that issue. That is what they see as the ambiguous part of that statute, because it is pretty clear in the statute that there's a restriction on that, as I see out of time. Keep going. We gave Ms. Williams plenty of time. We'll give you the time to answer our questions. Okay. So in Zang, the court said there is a genuine ambiguity here, as far as whether that's just a restriction in the regulations or if it's jurisdictional. And first, the Zang court found that there's a genuine ambiguity, and they mentioned that both the Second Circuit in a prior decision, the Fifth Circuit and the Sixth Circuit, had already, before even the board weighed in on whether or not this was a jurisdictional issue, found that the board lacks jurisdiction to entertain a motion to reopen Suus Pante, filed by a petitioner after, or an alien after, he has been removed from the country. So at least three courts, before the board even weighed in on this, saw this issue as jurisdictional. And then the Zang court goes through the reasons why it finds that the board's finding that it's a jurisdictional issue is reasonable. The first being that the history of the regulation, since 1951, the board had interpreted its own powers as not extending to reopening cases from aliens who are filing those cases from outside of the country. So there's a historical precedent. Additionally, the court mentioned that, once again, that this was not the sort of power that Congress had made. It was regulations promulgated by the Attorney General, and so they were prevented to define the contours of that. So what is the Department of Justice's position on this? Is it jurisdictional? It is jurisdictional. That is our position, that it's jurisdictional. And our position is also that Desai answers the question as far as whether it's jurisdictional, and so does Zang. To the extent, let's assume we adopted that part of the reasoning of Zang that you were just summarizing. Yes. And let's assume that we are no longer instructed to apply our deference. At that point, isn't there a compelling argument that the BIA's interpretation of the bar as jurisdictional is improper, if we're reviewing that without deference, for all of the reasons that the Second Circuit expressed its skepticism? Right. So that's where I was – is it okay for me to go into a little bit, Kaiser versus Volke, so I can answer your question properly? So obviously I'm going to – we can only speculate as far as what the Supreme Court is going to decide in Kaiser versus Volke. It's very unlikely that they will find that there's no deference whatsoever to an agency's interpretation of its own regulations. The government's position – So why is it so unlikely? Why wouldn't they – why couldn't they say, well, we'll have something here that looks like old-school deference, pre-hour, pre-Chevron kind of deference, deference of the sort that says, to the extent you're persuasive, we pay attention to you. Otherwise, we don't. What's so far-fetched about that, Ms. Quartles? I mean, there's been a long history, and there's been a lot of reliance on agencies looking to their – people who rely on the agency's regulations and the agency's interpretations of their own regulations. That's what they grab their shirt off, right? That's the point. Why would they bother to take the case up if all they were going to say was, you know, everybody's been relying on this for a long time, so we're not changing anything? I mean, so I can tell you what the government's position in that case is. I will say that if our deference goes away and there's absolutely no deference whatsoever to regulations, of course our cases are going to be affected by that. So we should hold this CID because we just don't know what's going to happen? I mean, I wouldn't be opposed to it, but I could explain why it's unlikely to matter in this particular case. Because, go ahead. So in Kaiser v. Wilkie, the government has filed a brief that is now Westlaw searchable. And so they are advocating that the so-called our deference should be narrowed and refined so that it's no more solicitous than Chevron deference. So what they're advocating that the court do is first look to the regulatory language to see if there's a genuine ambiguity, and then if there is a genuine ambiguity, to defer to the agency's interpretation only if it's reasonable. So we're going to a Chevron from the our not plainly erroneous or inconsistent with regulation sort of analysis. And then the government also advocates that that only... How does that get us to how that impacts this? Okay. So there is a genuine ambiguity in the regulation that has been the so-called post-parture bar regulation. And as the Zang court analyzes in its own case, clearly there's an ambiguity as three courts before the board even interpreted it exactly the same way that the board interprets it in matter of Armanduras-Mendez. So three courts are saying that the plain language says that there's no jurisdiction over these sorts of sui sponte motions filed by petitioners outside of the country. So there's a genuine question and there's a genuine ambiguity. And then we will ask then is the agency's interpretation reasonable? So here there's, you know, the prior precedent supports the idea that it's reasonable. There's a long history of the departure bar as a limitation on the board's jurisdiction. And when read in context... So your position is you think it's going to end up with Chevron deference and you win anyway? Well, I don't have a position as far as how I think it's going to end up. But I'm just saying if... So either I think things will remain the same because that is the law of land currently. And stare decisis is usually upheld. But if it's not, if there is a narrowing or tailoring, it seems most likely that it would go in a Chevron direction. And in that case, it wouldn't affect the Second Circuit's analysis as adopted by this court. Okay. Now, we've spent a lot of time on this case. At the end of all this, is it much conversation about nothing because Mr. O'Reilly said, yeah, I consent to removal. And that all by itself is a basis on which to uphold what the BIA did. Well, so I don't think that the prior order is properly before this court. So I don't think that anything that happened during that first removal hearing is relevant to the petition for review. I think the only thing that we can look at is what the board did with the motion to reopen. So once again, it would make my job easier to say, yes, it doesn't matter because he waived it. But he did file a motion to reopen. And the board needed to respond to that motion to reopen. And it's our position that the board's response was legally correct. And there's no sidestepping these issues? I don't think there is. Okay. Anything else? Okay, thank you very much, Ms. Quarles. Appreciate it. Ms. Williams, we'll have your rebuttal. Thank you, Your Honors. I just want to direct the Court's attention to a couple points that were just made by my sister counsel. So our is implicated here. And our is implicated in several decisions that are being proposed before the Court today. It is implicated in Desai because Desai relied on Zhang. And Zhang actually did rely on our deference in making its decision. It is also implicated in the Pereira decisions that are at hand in here because Hernandez-Perez did cite our, which again the Ninth Circuit cited in its basic whole cloth adoption of the arguments that were in with Hernandez-Perez. What I would bring the Court's attention to is that, as also mentioned earlier, this is a jurisdiction issue. That I think the Court should review because, again, how can an agency decide its own jurisdiction, decide what it can and cannot hear, and basically say this is not reviewable by a court? And I think in this case – How about this way? The agency is given full discretion by the statute. And it then chooses how it will use that discretion. And it says we are deciding for ourselves that as a categorical matter we will never allow somebody in. And we're just going to say we don't even – we're not even going to look at it. We're going to – we'll call it jurisdiction. We just won't do it ever. Is that unlawful? Is that an unlawful exercise of the power that the agency has been given by Congress? I would argue yes. However, I would argue this case is slightly different in the fact that while maybe up until 2009, the Board had kind of done a carte blanche, but in 2009 they carved out an exception. So now they're changing what they believe in an arbitrary and capricious way that's not being consistently held across the Board that a potential due process issue was raised. And in this case, it's specific to an in absentia motion to reopen based on lack of notice. So if they make one exception when they have a concern about due process, then if they say – then any argument put to them and couched as due process, they have to consider? I'm not conceding that they have to consider. I think the issue is here is that they can't on the one hand state that this is completely something that's not open to review, we're not going to make exceptions, then later make an exception, but then not consider where in this case an exception raises an extremely valid due process issue. But if they're looking at this as a matter of their exercise of discretion, why can't they exercise discretion to have one exception category, exceptional category of cases and not others? Why isn't that a valid exercise of discretion if that's the land we're in? And haven't we already said if that's the land we're in, it's functionally unreviewable? I think in this case, when they made the carve-out exception, they were doing it in their jurisdiction way. They weren't doing it necessarily out of discretion. And in this case, they're using the post-departure bar as a jurisdictional issue as to why they can't even review the merits of the motion to reopen that we filed. In this court in 2006, in Cruz v. AG, the court remanded back to the board to explain, logically, its unwillingness to reopen the case because Cruz was no longer removable and that his sole conviction was vacated. I understand it's a slightly different version, but it's still a due process issue that the board refuses to even consider in this case. Okay. Thank you very much. Thank you. We appreciate the audience at the council. We've got the matter under advisement. Thank you. And we recess.